# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF CALIFORNIA
# FRESNO DIVISION

| | |
|---|---|
| **DURRELL PUCKETT, CDCR #-G-05549,** | Civil No.   1:08cv01243-BTM (POR) |
| Plaintiff, | **ORDER GRANTING: (1) MOTION TO DISMISS THIRD AMENDED COMPLAINT; AND (2) JOINDER REQUEST** |
| vs. | |
| **NORTH KERN STATE PRISON EMPLOYEES,** *et al.*, | (Dkt Nos. 42, 44) |
| Defendants. | |

Plaintiff Durrell Puckett ("Puckett"), a state prisoner proceeding *pro se* and *in forma pauperis* with this 42 U.S.C. § 1983 civil rights action, alleges in his Third Amended Complaint ("TAC") violations of his constitutional rights associated with correctional officers' failure to protect him from harm and allegedly retaliatory conduct.[1] (Dkt No. 22.) This matter is before the Court on Defendants' Motion To Dismiss for failure to exhaust administrative remedies. (Dkt No. 42.) Puckett filed two Oppositions and a Supplemental Opposition, none of which developed the evidentiary record on the exhaustion issue. (Dkt Nos. 45, 46, 47.) Defendants' Reply was due April 2, 2010, with none filed. For the reasons discussed below, the Motion is **GRANTED**.

---

[1] This case was re-assigned for all purposes from the bench of the Eastern District of California to this Court on November 26, 2008. (Dkt No. 7.)

The TAC refers to conduct by officers occurring on March 23, 2008 (TAC pp. 3-4), July 18, 2008 (TAC p. 4), and July 29, 2008 (TAC p. 8). Puckett was stabbed by fellow inmates allegedly as a result of false statements a prison official made in one of those incidents that he was a snitch and child molester. He alleges physical and psychological harm from officials' conduct and failures to act. As summarized by Defendants:

> The TAC alleges that on March 23, 2008, Murguia wrote a false report stating th[at] Puckett threatened him because Puckett refused to cancel an inmate appeal. (TAC at 3.) [¶] The TAC alleges that on July 18, 2008, Hill stated that Puckett was a child molester and a snitch. (TAC at 4.) Zollenger was present when Hill made these statements but took no action to protect him from harm. (*Id.* at 8.) Finally, Puckett alleges that he informed Defendants Biggs, Roth, Hense, and Grannis of his fears of being attacked by other inmates due to Hill's alleged statements but they took no action to protect him from harm. (*Id.* at 6.)

(Mot. P&A, Dkt No. 42-2 2:17-23.)

Puckett's TAC named as defendants the prison warden and ten individual correctional officers. (Dkt No. 22.) By Order entered August 5, 2009, on initial screening of the TAC, this Court dismissed six of the named defendants and several of Puckett's claims for failure to state a claim, and narrowed certain other of his claims.[2] (Dkt No. 24; *see* 28 U.S.C. §§ 1915(e)(2), 1915A(b).) The claims and defendants that survived initial screening are a retaliation claim against defendant Murguia and Eighth Amendment failure to protect claims against defendants Hill, Zollenger, Biggs, Roth, Hense, and Grannis (collectively "Defendants"). (Dkt No. 24, 5:24-27.)

The Prison Litigation Reform Act of 1996 ("PLRA") requires procedural and substantive exhaustion of administrative remedies before an inmate can bring a civil action in federal court. 42 U.S.C. § 1997e(a) (2000) ("No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted"). The PLRA exhaustion requirement is mandatory. Porter v. Nussle, 534 U.S. 516, 532 (2002). The administrative process must be *completed* before filing suit on a particular claim, regardless of the relief sought by the prisoner and regardless of the relief available through that process. Id.; *see also* Booth v. Churner, 532

---

[2] The Ninth Circuit dismissed Puckett's appeal of that screening Order on October 22, 2009, for lack of jurisdiction. (Dkt No. 37.)

U.S. 731, 738-39 (2001); McKinney v. Carey, 311 F.3d 1198, 1199-1201 (9th Cir. 2002) (*per curiam*). Even when the prisoner seeks relief not available in grievance proceedings, such as money damages, exhaustion of the claim is a prerequisite to suit. Booth, 532 U.S. at 741. Compliance with prison grievance procedures is all the PLRA requires: the prison's requirements, not the PLRA itself, define the boundaries of proper exhaustion. Jones v. Bock, 549 U.S. 199, 218 (2007).

California accords its inmates the right to appeal administratively "any departmental decision, action, condition, or policy" they can demonstrate has an adverse effect on their welfare, as well as any alleged misconduct by named correctional officers. CAL. CODE REGS. tit. 15, § 3084.1(a),(e). In order to satisfy the PLRA exhaustion requirement, California prisoners must use the process established by CAL. CODE REGS., tit. 15, §§ 3084.1-3084.6, establishing four levels of administrative review: (1) informal resolution; (2) formal written appeal on a CDC 602 inmate appeal form; (3) Second Level appeal to the institution's head or designee; and (4) Third Level appeal to the Director of the California Department of Corrections. CAL. CODE REGS. tit. 15, § 3084.5.

An inmate who has "properly" availed himself of the state's administrative process through the highest available administrative level satisfies the exhaustion requirement. Butler v. Adams, 397 F.3d 1181, 1183 (9th Cir. 2005); McKinney, 311 F.3d at 1201-02 (same). That is, inmates must file their grievance claims and appeals in the place, at the time, and in the manner the administrative rules require. Woodford v. Ngo, 548 U.S. 81, 94 (2006); *see, e.g.*, CAL. CODE REGS., tit. 15, § 3084.2(c) (an initial grievance must be submitted within fifteen working days of the event giving rise to the grievance). The appeals coordinator may reject untimely grievances. CAL. CODE REGS., tit. 15, § 3084.6(c). A claim rejected as untimely or as otherwise procedurally defective remains unexhausted for PLRA purposes.[3] Woodford, 548 U.S. at 83-86, 90-91, 103 (defective claims or appeals rejected as defective do not satisfy the exhaustion requirement, considering "the informality and relative simplicity of prison grievance systems like California's"). "The obligation to exhaust 'available' remedies persists as long as *some* remedy remains 'available.' " Brown v. Valoff, 422 F.3d 926, 935 (9th Cir. 2005), *citing* Booth, 532

---

[3] "If a prison regulation explicitly grants prison officials discretion to consider untimely or otherwise procedurally defective grievances, of course prison grievance remedies would still be 'available,' and thus unexhausted, if a prisoner had not even tried to file a grievance simply because it was untimely or otherwise procedurally defective." Woodford, 548 U.S. at 115 n.10, Breyer, J. concurring.

1  U.S. 731 (a prisoner must "press on to exhaust further levels of review" until he has either received all
2  "available" remedies at an intermediate level of review "or been reliably informed by an administrator
3  that no remedies are available").  Although Puckett contends he was told at levels below the Third Level
4  of review he could not further appeal, he does not substantiate that representation, and he represents that
5  within a few months after he filed this action, he proceeded to exhaust his administrative remedies with
6  respect to the claims alleged in his TAC.  (Dkt No. 45, Feb. 25, 2010 Opposition.)

7  Failure to exhaust administrative remedies is an affirmative defense properly raised by a
8  defendant in an unenumerated FED.R.CIV.P. Rule 12(b) motion.  Jones, 549 U.S. at 216.  If the court
9  concludes the prisoner has not exhausted non-judicial remedies, the proper remedy is dismissal of the
10 claim without prejudice.  Wyatt v. Terhune, 315 F.3d 1108, 1119-1120 (9th Cir. 2003).  Defendants bear
11 the burden of raising and proving non-exhaustion.  Id. at 1119.  The court may resolve any disputed
12 material facts on the exhaustion issue by looking beyond the pleadings in deciding a motion to dismiss
13 for failure to exhaust.  Id. at 1119-20; *see* Brown, 422 F.3d at 939 n.13.  No presumption of truthfulness
14 attaches to a plaintiff's assertions associated with the exhaustion requirement.  *See* Ritza v. Int'l
15 Longshoremen's and Warehousemen's Union, 837 F.2d 365, 369 (9th Cir. 1988).  In its scheduling
16 Order, this Court informed Puckett, among other things, of the consequences should Defendants' Motion
17 be granted and of "his opportunity to include in his Opposition whatever arguments and documentary
18 evidence he may have to show that he did, in fact, exhaust all administrative remedies available to him
19 prior to filing suit."  (Dkt No. 43, *citing* Wyatt, 315 F.3d at 1119-21 and Marella v. Terhune, 568 F.3d
20 1024, 1028 (9th Cir. 2009).)

21  Defendants represent:

22  Puckett submitted an inmate appeal complaining that Murguia wrote a false report accusing Puckett of threatening him and his family.
23  That appeal (log number NKSP B-08-1935) is dated three days before Puckett filed the instant complaint and was not exhausted at the Third
24  Level of review until four months after the action was filed. [¶] Puckett never submitted any appeal complaining of the July 18, 2008 incident
25  regarding Hill's statements, or being stabbed due to the failure of Defendants to protect him.
26
   (Dkt No. 42-2, 2:7-12.)
27
   \\
28

In support of their Motion, Defendants filed sworn declarations from two Inmate Appeals Branch officers. Those officials authenticate administrative documentation submitted to substantiate all Puckett's filed grievances and their dispositions. Declarant L. Williams, Appeals Coordinator at North Kern State Prison, provides a copy of Puckett's Inmate Appeals Tracking System printout, Levels I and II "for all appeals he submitted for review while at" that prison. (Dkt No. 42-4, Williams Decl. ¶ 6, Exh. A.) Declarant D. Foston, Chief of the Inmate Appeals Branch, California Department of Corrections and Rehabilitation, which "receives and maintains all inmate appeals (i.e. grievances) accepted for Director's-Level review," provides a printout identifying "all appeals submitted by" Puckett for Third Level review, with their disposition dates. (Dkt No. 42-3, Foston Decl. ¶ 3, Exh. A.) The Motion charts five grievances Puckett pursued through Third Level denials for separate incidents occurring on August 17, 2008, October 14, 2008, November 26, 2008, and December 28, 2008. (Dkt No. 42-2, 3:1-9.) The Third Level disposition dates for all his identified grievance range from January 20, 2009 through May 22, 2009, all post-dating the filing of this action on August 22, 2008. (Id.)

In fact, Puckett appears to concede he did not exhaust his administrative remedies before filing suit. *See* Wyatt, 315 F.3d at 1120 ("a prisoner's concession to nonexhaustion is a valid ground for dismissal"). His three one-page opposition filings include the contentions he "was told that I could not file a complaint on the 7-18-08 incident" as against certain of the named defendants and "was told there's no remedy." (Feb. 25, 2010 Opposition, Dkt No. 45.) "Because they lied saying I couldn't appeal a denied decision and would not return or answer complaints until late," Puckett contends "this should be taken into great consideration." (Id.) In addition, his March 3, 2010 Opposition reiterates he was told he could not appeal, and could not receive a remedy, but further asserts "N.K.S.P. Log #-08-1935 shows I appealed against all defendants." (Dkt No. 47.) The fact that Puckett ultimately pursued at least five grievances to the Third Level of review reveals he was actually aware of the review levels available to him. Thus, even assuming prison officials told him administrative relief was unavailable, no evidence in the record shows he relied on those representations or that they were the reason he did not comply with CAL CODE REGS., tit. 15, §§ 3084, *et seq.* Brown, 422 F.3d at 935; *see also* Ngo v. Woodford, 539 F.3d 1108, 1110-11 (9th cir. 2008) (rejecting prisoner's arguments that officials "didn't follow procedures and misled him" when those representations could have no effect on his ability to exhaust).

1  The erroneous oral representations to the contrary allegedly made to him thus support no finding he
2  relied on any such information as authoritative, potentially excusing his exhaustion obligations.

3  In his March 1, 2010 Supplemental Opposition, Puckett also appears to concede he filed his
4  lawsuit prematurely.  He complains prison officials responded "at first" only "informally" and "off the
5  record," purportedly causing him to "violate[] my time constraints," and the grievance system was not
6  responsive, instead blaming him for not filing complaints.  (Dkt No. 46.)  He complains "[n]obody tried
7  to review my claim until weeks/months [after the incidents] without outside interference/interventions."
8  (Id.)  Further, with respect to timing, Puckett states "it took [him] until 9-13-08 to accomplish getting
9  heard again," a date falling 22 days after he filed this civil rights action.  (Dkt No. 47, Mar. 3, 2010
10 Opposition.)  Puckett also represents "*now* all complaints are done at this time from" log number NKSP
11 08-1935.  (Dkt No. 45, Feb. 25, 2010 Opposition (emphasis added).)  However, that grievance had been
12 reviewed at Levels I and II (only) as of August 19, 2008, just three days before he filed his Complaint.
13 (Williams Decl. ¶ 7, Dkt No. 42-4.)  Defendants' evidence shows the Third Level review of NKSP 08-
14 1935 was not completed until January 20, 2009.  (Foston Decl. Exh. A.)  Thus, while Puckett argues he
15 "exhausted my remedies in due time before the *amended complaint* was done" (Dkt No. 45 (emphasis
16 added)), a prisoner must exhaust the appeals process before *initiating* a civil rights lawsuit.  *See* Jones,
17 549 U.S. 199; *see also* McKinney, 311 F.3d at 1199-1201; Butler, 397 F.3d at 1183.

18  Puckett has not rebutted Defendants' showing he failed to exhaust administrative remedies
19 before filing this lawsuit.  The Court does not have discretion to excuse exhaustion, even in "the
20 interests of justice."  Booth, 532 U.S. at 741 n.5, 6.  For all the foregoing reasons, **IT IS HEREBY**
21 **ORDERED** Defendant Grannis' Request To Join In Motion To Dismiss is **GRANTED**, and Defendants'
22 Motion To Dismiss the Third Amended Complaint is **GRANTED**, without prejudice, as to all remaining
23 defendants and claims for failure to exhaust administrative remedies.  The Clerk shall enter judgment
24 **DISMISSING** this case without prejudice.

25  **IT IS SO ORDERED.**
26 DATED:  May 3, 2010
27
28                              Honorable Barry Ted Moskowitz
                                United States District Judge